UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| CHENNAULT INTERNATIONAL AIRPORT AUTHORITY | CASE NO.  2:22-CV-02735 |
| VERSUS | JUDGE JAMES D. CAIN, JR. |
| STARR SURPLUS LINES INSURANCE CO | MAGISTRATE JUDGE KAY |

MEMORANDUM RULING

Before the court is a Motion to Transfer [doc. 10] filed by defendant Starr Surplus Lines Insurance Company ("Starr") under 28 U.S.C. § 1404(a), seeking transfer of this matter to the United States District Court for the Southern District of New York. Plaintiff Chennault International Airport Authority ("Chennault") opposes the motion. Doc. 18. Also before the court is a Motion for Partial Summary Judgment [doc. 19] filed by Chennault, seeking a determination by the court that Louisiana law applies to this case. Starr opposes the motion. Doc. 29. The matters came before the court for hearing on March 21, 2023, and the undersigned now issues this ruling.

I.
BACKGROUND

This suit arises from damage to property owned by Chennault in Hurricane Laura and Hurricane Delta, which both made landfall in Southwest Louisiana in 2020. Chennault is a political subdivision of the state responsible for the administration of Chennault International Airport in Calcasieu Parish, Louisiana. *See* La. Rev. Stat. § 33:4710.1 *et seq.* At all relevant times Chennault had in place a property insurance policy with Starr covering

the airport. Doc. 10, att. 3. Chennault filed claims with Starr after the storms but alleges that the insurer failed to timely or adequately compensate it for its covered losses. Accordingly, it filed suit in this court on August 16, 2022, raising claims of breach of contract and bad faith under Louisiana law. Doc. 1.

Starr now moves to transfer the suit to the United States District Court for the Southern District of New York, pursuant to the following clause in the policy:

> **e. Choice of Law and Choice of Venue**
>
> No suit, action, or proceeding regarding this POLICY for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this POLICY. The COMPANY agrees that any suit, action, or proceeding against it for recovery of any claim under this POLICY shall not be barred if commenced within the time prescribed in the statutes of the State of New York. Any suit, action, or proceeding against the COMPANY must be brought solely and exclusively in a New York state court or a federal district court sitting within the State of New York. The laws of the State of New York shall solely and exclusively be used and applied in any such suit, action, or proceeding, without regard to choice of law or conflict of law principles.

Doc. 10, att. 3, p. 25. Chennault opposes the motion, arguing in relevant part that Louisiana law prevents the enforcement of such a clause against a governmental entity.[1] *See* La. Rev. Stat. § 9:2778(B)(1). Chennault also moves for partial summary judgment on the choice of

---

[1] Chennault also argues that Policy Endorsement No. 28, the Service of Process Clause Endorsement, nullifies the forum selection clause. That clause states that Starr "will submit to the jurisdiction of a court of competent jurisdiction within the United States" but also provides that "[n]othing in this condition constitutes or should be understood to constitute a waiver of the Insurer's right . . . to seek transfer of a case to another court as permitted by the laws of the United States or of any state in the United States." Doc. 10, att. 3, p. 7. The court does not reach that argument here but observes that other district courts have indicated that similar clauses override a mandatory forum selection clause even in the presence of this reservation language. *See Emerald Holdings, Inc. v. W.R. Berkley Syndicate Ltd.*, 2021 WL 6752004 (C.D. Cal. May 26, 2021) (finding that Service of Suit clause, which also stated that insurer would "abide by the final decision" of court, permitted plaintiff to choose its own forum); *see also H.J. Heinz Co. v. Starr Surplus Lines Ins. Co.*, 2015 WL 4608118 (W.D. Penn. July 31, 2015) (stating in dicta that "[t]he plain language of the [endorsement] sets forth that Starr will consent to the jurisdiction of any Court chosen by Heinz").

law applicable to the motion. Doc. 19. Starr opposes the motion, arguing that choice of law must be determined by the transferee court. Doc. 29.

### III.
### LAW & APPLICATION

**A. Choice of Law**

At the heart of Chennault's motion is whether the court is bound by the policy's New York choice of law clause, or whether it may consider Louisiana Revised Statute 9:2778 in determining the enforceability of the forum selection clause. The Louisiana statute declares that clauses in "public contracts involving the state or a political subdivision of the state" and requiring resolution of disputes thereunder outside of the state or under the laws of a different state are "null, void, unenforceable, and against public policy[.]"[2] La. Rev. Stat. § 9:2778. Chennault argues, however, that the court is barred from even considering this statute given the clause's requirement that "The laws of the State of New York shall solely and exclusively be used and applied . . . without regard to choice of law or conflict of law principles." Doc. 10, att. 3, p. 25.

---

[2] It states, in full:
    A. The legislature finds that with respect to public contracts involving the state or a political subdivision of the state, provisions in such agreements requiring disputes arising thereunder to be resolved in a forum outside of this state or requiring their interpretation to be governed by the laws of another jurisdiction are inequitable and against the public policy of this state.
    B. The legislature hereby declares null, void, unenforceable, and against public policy, any provision in a contract, subcontract, or purchase order, as described in Subsection A, which either:
        (1) Requires a suit or arbitration proceeding to be brought in a forum or jurisdiction outside of this state.
        (2) Requires interpretation of the agreement according to the laws of another jurisdiction.
    C. The provisions of this Section shall apply to public contracts, as described in this Section, entered into on or after June 30, 1992.
La. Rev. Stat. § 9:2778.

Starr relies on the Supreme Court's instruction *Atlantic Marine* that "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for West. Dist. of Tex.*, 571 U.S. 49, 64–65 (2013). *Atlantic Marine*, however, "presupposes a contractually valid forum-selection clause." 571 U.S. at 581 n. 5; *see also In re Rolls Royce Corp.*, 775 F.3d 671, 678 (5th Cir. 2014) ("When the parties hold a valid forum selection clause, *Atlantic Marine* alters the normal section 1404 analysis.")

Federal law governs the enforceability of forum selection clauses. *Alliance Health Group, LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 399 (5th Cir. 2008). Such clauses are considered *prima facie* valid and enforceable unless they are shown to be unreasonable. *In re Spillman Dev. Grp., Ltd.*, 710 F.3d 299, 306 (5th Cir. 2013). In the Fifth Circuit the court considers several grounds for "fundamental unfairness," including whether "enforcement of the forum selection clause would contravene a strong public policy of the forum state." *Haynsworth v. The Corporation*, 121 F.3d 956, 965 (5th Cir. 1997). Likewise, the Supreme Court has held that the forum state's rejection of forum selection clauses should be considered by the district court in balancing factors under 28 U.S.C. § 1404(a). *Barnett v. DynCorp, Internat'l, LLC*, 831 F.3d 296, 302–03 (5th Cir. 2016) (citing *Stewart Org., Inc. v. RICOH Corp.*, 487 U.S. 22, 30–31 (1988)). Accordingly, Louisiana law can and should be considered to review Chennault's challenge to enforceability at least as far as determining the forum state's public policy.

B.  **Motion to Transfer**

Starr moves for enforcement of its forum selection clause and transfer to the Southern District of New York under 28 U.S.C. § 1404(a). As it notes, the Supreme Court held in *Atlantic Marine* that valid forum selection clauses must be enforced under § 1404(a) "in all but exceptional circumstances" unrelated to the convenience of the parties. 571 U.S. at 59. Accordingly, a court faced with such a motion under a valid and mandatory forum selection clause may only consider public interest factors relating to the transfer. *Id.* at 63. The Fifth Circuit's consideration in *Haynsworth*, supra, that a forum selection clause would not be enforced when it contravened "a strong public policy of the forum state" is thus unaltered by the Supreme Court's subsequent holding in *Atlantic Marine*. *See, e.g.*, *Barnett*, 831 F.3d at 301–02; *Hotel Mgmt. of New Orleans LLC v. General Star Indem. Co.*, 603 F.Supp.3d 356, 362–63 (E.D. La. 2022); *Stellar Restoration Servs., LLC v. James Christopher Courtney*, 533 F.Supp.3d 394, 417–423 (E.D. Tex. Mar. 30, 2021). Under *Haynsworth*, the party resisting enforcement of a mandatory forum selection clause "bears a heavy burden of proof." 121 F.3d at 963 (internal quotations omitted).

Chennault identifies Louisiana's "strong public policy" as embodied in Louisiana Revised Statute 9:2778. That statute invalidates forum selection and choice of law clauses in public contracts with state entities, based on the following:

> The legislature finds that with respect to public contracts involving the state or a political subdivision of the state, provisions in such agreements requiring disputes arising thereunder to be resolved in a forum outside of this state or requiring their interpretation to be governed by the laws of another jurisdiction are inequitable and against the public policy of this state.

La. Rev. Stat. § 9:2778(A).

Starr maintains that § 9:2778's reference to "public contracts" excludes insurance policies. To this end it notes similar phraseology in "other statutes prohibiting forum-selection clauses in generic public contracts of various kinds"[3] as well as the legislature's regulation of insurance policies under the Insurance Code, Title 22, and the fact that surplus lines policies like this one are specifically exempt from Title 22's prohibition on forum selection clauses. *See* La. Rev. Stat. § 22:868(D).

Section 9:2778 was enacted in 1992 but has only been applied a few times. *See* La. Atty. Gen. Op. No. 96-127 (La.A.G.), 1996 WL 210828 (Mar. 26, 1996) (invalidating arbitration clause in lease with port commission); La. Atty. Gen. Op. No. 03-0046 (La.A.G.), 2003 WL 295602 (Jan. 30, 2003) (upholding arbitration clause in film production contract involving Department of Economic Development, because it did not require the arbitration to take place outside of Louisiana). The fact that other Louisiana statutes, infra note 2, also prohibit forum selection clauses in more specific types of public contracts does not mandate a narrower reading of § 9:2778. Instead, the applications to date suggest a broad construction of the term "public contract." The only question, then, is whether the separate regulation of insurance policies under Title 22 means they are exempted from the legislature's expression of concern under § 9:2778.

Louisiana Revised Statute 22:868(A)(2) broadly invalidates clauses "[d]epriving the courts of this state of the jurisdiction or venue of action against the insurer." Under subsection (D), however, subsection (A)'s provisions "shall not prohibit a forum or venue

---

[3] Specifically, Starr points to Louisiana Revised Statute § 9:2779 (construction contracts, subcontracts, and purchase orders); Louisiana Revised Statute § 38:2196 (contracts for public works and improvements); and Louisiana Revised Statute § 48:251.8 (contracts for projects of the Louisiana Department of Transportation).

selection clause in a policy form that is not subject to approval by the Department of Insurance," i.e., a surplus lines policy. La. Rev. Stat § 22:868(D). Accordingly, § 22:868 does not evince a "strong public policy" against forum selection clauses in surplus lines policies. *Hotel Mgmt. of New Orleans, LLC*, 603 F.Supp.3d at 362–63.

The fact that § 22:868 does not reflect such a policy, however, does not mean that it does not exist. And if § 9:2778 does apply to insurance contracts, then it seems a strong expression of Louisiana public policy in that area. The court thus begins with the language of § 9:2778 itself. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." *Benjamin v. Zeichner*, 113 So.3d 197, 202 (La. 2013). The court must read words and phrases in context and construe them according to their common and approved usage. *ABL Mgmt, Inc. v. Bd. of Sup'rs of Southern Univ.*, 773 So.2d 131, 135 (La. 2000). At the same time, "[t]he Legislature is presumed to have enacted each statute with deliberation and with full knowledge of all existing laws on the same subject." *Id.*

Starr emphasizes the phrase "public contracts" within § 9:2778, suggesting that it narrows the statute's application. The court can find no body of state law interpreting this phrase. While it is used more frequently in a construction context, the limited application of the statute to date has included leases and film production contracts. The policy at issue was purchased with public money and covers public property; there is thus every basis for considering it a "public contract." Additionally, the statute falls under the title regulating contracts as a whole. It was enacted decades after the original version of § 22:868, which

was passed in 1948 to "reverse-preempt" federal law mandating arbitration. *See Creekstone Juban I, LLC v. XL Ins. America, Inc.*, 282 So.3d 1042, 1052 (La. 2019) (WEIMER, J., concurring). The exemption for surplus lines policies, however, did not come until amendments passed in 2020. 2020 La. Sess. Law Serv. Act 307 (S.B. 156) (WEST). The two statutes offered concurrent protection against forum selection clauses and were not even in conflict until the exemption offered under the amendment. While Starr points to the canon of statutory interpretation that "the more specific statute controls over the general statute," *Burge v. State*, 54 So.3d 1110, 1113 (La. 2011), these statutes are equally specific in their application to forum selection clauses within a certain subset of contracts.

The legislature failed to cross-refence § 9:2778 when it enacted § 22:868(D). But it also gave no indication that § 868(D) supersedes all other statutes on the subject. It is well settled that insurance policies are contracts under Louisiana law. *E.g.*, *Huggins v. Gerry Lane Enterps.*, 957 So.2d 127, 129 (La. 2007). The two laws are only in potential conflict as to surplus lines policies issued to state entities, a narrow segment of the contracts governed by each respective statute. As the statutes cited by Starr itself show, the Louisiana legislature has no qualms about potentially overlapping provisions concerning forum selection clauses. *See also* La. Rev. Stat. § 23:921(A) (limiting forum selection clause and choice of law clauses in "every employment contract or agreement"); La. Rev. Stat. § 51:1407(A) (limiting application of venue selection clauses Louisiana Unfair Trade Practices Act suits). Accordingly, the presence of concurrent regulations governing this insurance policy does not invalidate § 9:2778's application.

Forum selection clauses "are generally enforceable and are not *per se* violative of public policy in Louisiana." *Shelter Mut. Ins. Co. v. Rimkus Consulting Grp., Inc., of La.*, 148 So.3d 871, 878 (La. 2014). But when a Louisiana statute expressly prohibits such a clause, the court has acknowledged the statute as an "expression of strong Louisiana public policy" for that limited application. *See Sawicki v. K/S Stavanger Prince*, 802 So.2d 598, 603 (La. 2001); *see also Shelter Mut. Ins. Co.*, 148 So.3d at 881 (citing La. Rev. Stat. § 23:921(A), among others, as examples of the legislature declaring forum selection clauses "unenforceable and against public policy in very limited circumstances"). Section 23:921(A), the most frequently applied of these exceptions under Louisiana caselaw, even lacks the full statement of legislative findings contained at § 9:2778(A). The statute under its plain terms or even through the interpretation of any ambiguity indicates the state's strong public policy against both forum selection clauses and choice of law clauses in the policy at issue, requiring a political subdivision of the state to litigate its insurance claim in New York and under New York law. This is clearly a valid area of state concern; it does not relate to private actors and their right to contract but to clauses in public contracts that would potentially subject a state actor to litigation under the laws of another state in an out-of-state forum. Accordingly, it is unenforceable under *Haynsworth*. There is likewise no basis for voluntary transfer under 28 U.S.C. § 1404(a), because neither the convenience of the parties and witnesses nor the interest of justice would counsel transferring this suit to New York.

## IV.
### CONCLUSION

For the reasons stated above, the Motion to Transfer [doc. 10] will be **DENIED** and the Motion for Partial Summary Judgment [doc. 19] will be **GRANTED**, insofar as Louisiana law is considered in determining the applicable public policy interests. The case will thus proceed through the Case Management Order [doc. 2] for first-party insurance claims arising from Hurricanes Laura and Delta.

**THUS DONE AND SIGNED** in Chambers on the 24th day of March, 2023.

JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE